Filed 1/8/25  P. v. Wallace CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID NELSON WALLACE,<br><br>    Defendant and Appellant. | H050429<br>(Santa Clara County<br> Super. Ct. No. C2114559) |

Appellant David Nelson Wallace was convicted by a jury of assault with a deadly weapon on two victims, residential burglary with a person present, and exhibiting a deadly weapon.  The trial court found two prior strike allegations to be true and sentenced Wallace to an indeterminate term of 50 years to life in prison, consecutive to a determinate term of 20 years.

On appeal, Wallace argues as trial error that (1) the trial court failed to instruct the jury sua sponte that it could consider the extent of actual injury in determining whether an object is a deadly weapon, and (2) the prosecutor misstated the law at closing argument by asserting that the jury could not consider the lesser included offenses of simple assault until it reached a verdict on the greater offenses of assault with a deadly weapon.  (Alternatively, he argues that the failure to object to both asserted errors amounted to ineffective assistance of counsel.)  As to his sentence, Wallace argues (1) the person-present finding—which renders his first degree burglary a violent felony—must

be stricken because it results an improper double punishment, and (2) the trial court failed to properly apply the amendments to Penal Code section 1385[1] as enacted by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill No. 81) in declining to dismiss his strike priors and serious felony enhancements. We find no prejudicial error except as to the court's construction of section 1385, subdivision (c) to Wallace's serious felony priors under section 667, subdivision (a). We reverse and remand for the sole purpose of resentencing.

# I. BACKGROUND

## A. *The Operative Information*

In January 2022, the Santa Clara County District Attorney charged Wallace by information with assault with a deadly weapon on Edgar Rodriguez (§ 245, subd. (a)(1); count 1), assault with a deadly weapon on Julia Gutierrez (§ 245, subd. (a)(1); count 2), first degree burglary with the allegation that persons not an accomplice (Julia Gutierrez and Edgar Rodriguez) were present (§§ 460, subd. (a), 667.5, subd. (c)(21); count 3), and misdemeanor exhibition of a deadly weapon other than a firearm in the presence of Christopher Latigue (§ 417, subd. (a)(1); count 4).[2] As to counts 1 and 2, it was alleged

---

[1] Unspecified statutory references are to the Penal Code.

[2] As to counts 1 through 3, the prosecutor alleged following aggravating circumstances under section 1170, subdivision (b): the crimes involved great violence, threat of bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)), Wallace was armed with or used a weapon at the time of the commission of the crime (*id.*, rule 4.421(a)(2)), Wallace had engaged in violent conduct that indicates a serious danger to society (*id.*, rule 4.421(b)(1)), Wallace's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (*id.*, rule 4.421(b)(2)), Wallace had served a prior term in prison or county jail under section 1170, subdivision (h) (*id.*, rule 4.421(b)(3)), and Wallace's prior performance on probation, mandatory supervision, post-release community supervision, or parole was unsatisfactory (*id.*, rule 4.421(b)(5)).

that Wallace personally used a dangerous and deadly weapon (a knife) (§§ 667, 1192.7, subd. (c)(23)).  It was further alleged that Wallace had two prior strike convictions (§ 1170.12) that also subjected him to sentence enhancements under section 667, subdivision (a).

**B.    *The Trial***

   **1.    *The Prosecution's Case***

      **a.    *The Crimes***

Late at night in November 2021, Edgar Rodriguez, his girlfriend, Julia Gutierrez,[3] and their young child were in their upstairs unit of a four-unit apartment building in San Jose.  Rodriguez and Gutierrez were in bed when they heard loud music outside through their closed windows and doors.  The music was coming from a parked car in front of which a woman they knew only as Jolene was dancing.

Rodriguez went downstairs and asked the driver of the car, Wallace, to turn down the music.  Rodriguez told Wallace that there were kids upstairs who needed to go to school the next day, but Wallace responded that he did not care.  Wallace seemed angry, and Rodriguez thought that Wallace was reaching to his right side for a weapon.  So Rodriguez hit Wallace.  The car "shift[ed] into gear back and forward," according to Rodriguez, almost running over Jolene, who was still standing toward the front, then "slammed into . . . park."

Gutierrez, who was watching from upstairs, called the police as Rodriguez walked back upstairs.[4]  The door to their apartment was open, and soon, Gutierrez saw Wallace initially pass the doorway toward their neighbor's apartment.  Wallace then came back

---

[3] At the time, Gutierrez was around seven months pregnant with her younger child.  Gutierrez believed that she was visibly pregnant at the time.

[4] Gutierrez's 911 call was played for the jury and admitted into evidence.

and "burst [their] door open." Still on the phone with the police, Gutierrez saw that Wallace was gripping a knife with a "closed fist." Gutierrez tried to stop Wallace from entering the apartment and told him that her son was inside, but he still came in.

Rodriguez was several feet behind Gutierrez, and Rodriguez recalled that Wallace tried to push Gutierrez out of the way. Wallace held a knife and charged forward with it. Rodriguez tried to push Wallace back out the door, but Wallace was bigger than he was.

Gutierrez saw Wallace make "stabbing motions" as he entered the apartment. Rodriguez thought that Wallace was trying to stab him with the knife, and he felt the knife impact his face, chest, arms, back, and "everywhere," though the knife "just wasn't going through." At one point, Rodriguez fell to the ground on one of his knees, and Wallace continued to try to stab him. Rodriguez yelled, and their neighbor Latigue came and helped get Wallace off him. Wallace then left. During the fight with Wallace, Rodriguez had been unaware that the blade of Wallace's knife had broken off at some point.

Although Rodriguez went to the hospital, he left without receiving treatment for any injuries. Gutierrez said she was scratched by the knife and had bruising on her stomach but was unsure of when the scratch was inflicted. But Gutierrez did not need stitches and did not sustain long-term issues due to her injury.

The assault was captured on surveillance cameras the couple maintained inside the apartment.[5] Gutierrez estimated that the police arrived about five minutes after her 911 call, and by that time Wallace had left.

A neighbor, Renee Zarate, who lived next door, heard arguing that night and saw a parked car in the apartment driveway. Zarate saw a man look inside the parked car, slam the car door shut, and go upstairs toward where Rodriguez and Gutierrez lived. Zarate

---

[5] The surveillance videos were played for the jury and admitted into evidence.

then saw the man stab Rodriguez and Gutierrez. Zarate went outside of her house and saw the man come down the stairs, yelling. She heard the man say, " '[n]obody hits me' " and that he was " 'going to come back and shoot all you mother fuckers up.' " Zarate saw the man drive and park in front of her house, continuing to yell for a few minutes. The car "took off" when the police arrived.

### b. *Forensic Evidence*

The knife used in the assault had broken into two pieces. An officer found the handle of the knife on the sidewalk outside Rodriguez and Gutierrez's apartment. Another officer found a blade on the apartment's living room floor.

### 2. *The Defense*

Wallace testified on his own behalf. In November 2021, Wallace was homeless and living in his van, working at a construction company. That evening, he was driving his other car, a Cadillac, when he met a woman walking on the streets. He drove the woman to an apartment building where she said she left her purse. Wallace parked his car close to the building and turned off the music to tell the woman that he would give her only a minute to go inside the apartment.

The woman was still in his car when a man, Rodriguez, approached and struck him "six, seven times," telling him that his music was too loud. Wallace denied swearing at Rodriguez or having any conversation with him before he was hit. He also denied reaching for anything in the car before he was hit, as he was caught by surprise.

Although Rodriguez ran upstairs, Wallace concluded he was in a "mutual combat" type of situation, so he grabbed a work knife from his back pocket and followed. In his testimony, Wallace described the knife as a carpet cutter with a round blade, "like a pizza cutter." And he described himself as "not the type of person to take anybody's hit or anything" and that the Rodriguez had "just hit [him] for no reason."

5

When Wallace went upstairs, the apartment door was open. He entered and saw Gutierrez on the phone, so he ran past her toward Rodriguez, who was in a crouched position. Wallace denied any interaction with Gutierrez but acknowledge he "attacked" Rodriguez for having "attacked" Wallace earlier. Wallace characterized himself as trying to "defend [him]self" against the person who had harmed him earlier. Due to a loose bolt, the blade of the knife dropped in the middle of the apartment as soon as Wallace swung it, leaving Wallace with only a handle.[6] Latigue started to strike Wallace on the back of his head. Wallace left because he was trying to figure out why he was "getting attacked by two guys."

Wallace initially stopped and went back upstairs so he could "get" Latigue. But then he decided to let it go and went to his car instead. As he came down the stairway, Wallace threw away the knife's handle. Wallace assumed that the blade had been left in the apartment.

Wallace drove away. Noticing later that the police were behind him with flashing lights on, he stopped his car and pulled over. After his arrest, he was brought to the hospital, where he received treatment to his arm, the back of his head, and his lip.

C.      *The Verdict and Sentencing*

In April 2022, the jury found Wallace guilty of all counts as charged and further found true as to all three counts the alleged aggravating circumstances that the offenses involved great violence (Cal. Rules of Court, rule 4.421(a)(1)), that Wallace engaged in violent conduct (*id.*, rule 4.421(b)(1)), and that Wallace personally used a deadly weapon (*id.*, rule 4.421(a)(2)), and as to count 3, the allegations that the offense involved threat of

---

[6] Wallace testified that the knife admitted into evidence by the prosecution was not his because his knife had a smaller blade that was less sharp.

6

great bodily harm (*id.*, rule 4.421(a)(1)) and that a person other than an accomplice was present (§ 667.5, subd. (c)(21)).

Following a separate court trial, the trial court found true the additional aggravating circumstances that Wallace had numerous prior convictions (Cal. Rules of Court, rule 4.421(b)(2)), Wallace had served a prior prison or county jail (*id.*, rule 4.421(b)(3)), and that Wallace's prior performance on probation, mandatory supervision, post-release community supervision, or parole was unsatisfactory (*id.*, rule 4.421(b)(5)). The trial court also found true that Wallace had a 1984 conviction for lewd and lascivious acts on a child under 14 (§ 288, subd. (a)) and a 1988 conviction for robbery (§ 211), both of which qualified as strike priors (§ 1170.12) and serious felony enhancements (§ 667, subd. (a)).

In September 2022, the trial court denied Wallace's request to strike his prior strike convictions and enhancements and sentenced him to 25 years to life for count 1 (assault with a deadly weapon as to Rodriguez), a consecutive term of 25 years to life for count 3 (first degree burglary), 25 years to life for count 2 (assault with a deadly weapon as to Gutierrez), which was stayed under section 654. The trial court also imposed a determinate term of 20 years for the two serious felony enhancements under section 667, subdivision (a) as to both counts 1 and 3. As to count 4, the trial court imposed a sentence of 30 days in county jail.

## II.    DISCUSSION

### A.    *Failure to Instruct on Limited or Lack of Injury*

Per CALCRIM No. 875, the trial court instructed the jury: "A *deadly weapon* other than a firearm is any object, instrument, or weapon that is used in such a way that is capable of causing and likely to cause death or great bodily injury. [¶] In deciding whether an object is a deadly weapon, consider all the surrounding circumstances." And the court defined "great bodily injury" as "significant or substantial physical injury" and

7

"an injury that is greater than minor or moderate harm." Wallace's counsel requested no additional instructions on this point. On appeal, Wallace argues that the trial court should have further instructed the jury that it could consider the minimal actual injury incurred in determining whether his knife qualified as a deadly weapon. And if the court had no sua sponte duty to so instruct, Wallace alternatively argues his counsel was ineffective for failing to request the pinpoint instruction. We find he has not demonstrated prejudice.

### 1. Legal Principles

" 'As used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." ' " (*In re B.M.* (2018) 6 Cal.5th 528, 532–533 (*B.M.*).) Although certain objects are considered deadly weapons as a matter of law, a knife is not. (*Id.* at p. 533.) " 'In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.' " (*Ibid.*) But "the determination . . . must rest on evidence of how the defendant actually 'used' the object." (*Id.* at p. 534.) "[A]lthough it is appropriate to consider the injury that could have resulted from the way the object was used, the extent of actual injury or lack of injury is also relevant." (*Id.* at p. 535.)

### 2. Duty to Instruct and Forfeiture

A trial court " ' "has a duty to instruct the jury 'sua sponte on general principles which are closely and openly connected with the facts before the court.' " ' " (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824 (*Gutierrez I*).) Although a party may request an instruction that " 'relate[s] particular facts to a legal issue in the case or "pinpoint[s]" the crux of a defendant's case,' " a trial court need not issue a pinpoint instruction absent a request. (*Ibid.*) " '[A] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has

8

requested appropriate clarifying or amplifying language.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 901.)  Here, the trial court correctly defined a deadly weapon by instructing the jury to "consider all the surrounding circumstances" per CALCRIM No. 875 when determining whether an object is a deadly weapon in the way it was used. All the surrounding circumstances logically extends to the *B.M.* court's assertion that " 'limited injury or lack of injury' " (*B.M.*, *supra*, 6 Cal.5th at p. 535) can suggest that a weapon was *not* used as a deadly weapon or was incapable of inflicting great bodily injury.  CALCRIM No. 875 is a correct statement of law.

Wallace claims that *B.M.*'s discussion of what constitutes substantial evidence of a deadly weapon is an "amendment to[] the principles of law contained in CALCRIM No. 875."  But where the principle of law at issue is a fact-specific inquiry into the totality of "surrounding circumstances," an instruction that these circumstances include the limited actual injury is a quintessential pinpoint instruction.  Wallace's failure to request the pinpoint instruction forecloses his claim of instructional error.  (*Gutierrez I*, *supra*, 45 Cal.4th at p. 824.)

### 3. *Ineffective Assistance*

Alternatively, Wallace argues that his trial counsel rendered ineffective assistance by failing to request pinpoint instructions in accordance with the language used in *B.M.*, *supra*, 6 Cal.5th 528.  To prevail on a claim of ineffective assistance of counsel, Wallace must establish both that his counsel's performance was deficient and that he suffered prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691–692 (*Strickland*).) To demonstrate deficient performance, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." (*Id.* at p. 688.)  As for prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

Even if we assume the absence of a satisfactory explanation for defense counsel's decision to not request an instruction pinpointing the extent of actual injury, Wallace cannot demonstrate prejudice on this record. As we have explained, the jury knew from CALCRIM No. 875 that it should "consider all the surrounding circumstances"—without limitation—when determining whether an object is a deadly weapon. And as counsel argued, those surrounding circumstances logically include whether the knife wielded by Wallace was capable of inflicting great bodily injury when he assaulted Gutierrez and then Rodriguez. Counsel repeatedly urged the jury to infer that the limited actual injury made it likely that what was left of the knife when Wallace assaulted Rodriguez "was just the handle." Noting that a "deadly weapon" must be "capable of causing and likely to cause death or great bodily injury," counsel argued that Wallace's "knife and whatever remnant on there" lacked that capacity. Counsel again argued that the knife was not a deadly weapon "[b]ecause after all that chaos, it didn't" cause great bodily injury but "at the very most [a] laceration to [Rodriguez's] head." At no point did the prosecutor argue that the extent of actual injury was irrelevant to the jury's determination of whether the knife was a deadly weapon; the prosecutor argued in line with CALCRIM No. 875 that a deadly weapon is one "capable of causing significant or substantial injury."

Given the jury instructions and defense counsel's argument on this point, we fail to see how there is a "reasonable probability" that had a pinpoint instruction been given, the jury would have rendered a more favorable verdict. (*Strickland*, *supra*, 466 U.S. at p. 694.) Wallace thus fails to demonstrate prejudice under *Strickland*'s second prong.

B.      *Prosecutorial Error in Closing Argument*

Wallace argues that the prosecutor committed error in closing argument by suggesting that the jury could not consider the lesser included offense of simple assault

10

until it reached a verdict on the greater offense, and that the prosecutor's argument combined with the trial court's allegedly deficient instructions amount to prejudicial error. We disagree. As Wallace's counsel did not object to the prosecutor's argument below, any argument is forfeited. But assuming defense counsel was ineffective by failing to object, any error was not prejudicial because the trial court correctly instructed the jury that it could decide the order in which it could consider each crime.

### 1. *Additional Background*

After the close of evidence, the trial court instructed the jury: "You must follow the law as I explain it to you even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

The trial court then instructed the jury as to counts 1 and 2 (assault with a deadly weapon) and the lesser included offense of simple assault. Consistent with CALCRIM No. 3518, the court explained: "If all of you find that the defendant is not guilty of a greater charged crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. A defendant may not be convicted of both a greater and lesser crime for the same conduct." The court also specified: "Simple Assault is a lesser crime of Assault with a Deadly Weapon Other than a Firearm charged in Counts 1 and 2. [¶] It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime."

Later, in rebuttal to the defense closing argument, the prosecutor asserted: "You cannot convict of a lesser crime unless . . . all 12 of you find him not guilty of the greater crime. It's not a chance to split the baby . . . and say . . . [']we'll just agree that it's the lesser crime.['] That's not how you do this. *You need to have all 12 agree that Counts 1*

11

*and 2 did not happen and that he's not guilty before you get to the lesser[]included offenses.* You should not get to the lesser included offenses." (Italics added.) The prosecutor then argued that "[t]he only element missing of the lesser[]included offense is the deadly weapon was used," and that here "[t]here's no question that this is an assault with a deadly weapon" and "no way that you end up on the lesser crime of assault." Wallace's counsel did not object.

### 2. *Claim of Prosecutorial Error is Forfeited*

Although "[a]dvocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] . . . '[I]t is improper for the prosecutor to misstate the law generally.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*).) And it is a well-established principle of law that a trial court may not instruct a jury to not deliberate on or consider a lesser included offense until unanimously agreeing to acquit on the greater offense. (*People v. Kurtzman* (1988) 46 Cal.3d 322, 335 (*Kurtzman*).) Here, the prosecutor's argument in rebuttal—that the jury "should not get to the lesser[]included offenses"—erroneously suggested to the jury that it could not consider the lesser included offenses until it had reached a verdict on the great offenses. But the failure to object to the prosecutor's closing argument forfeited this claim of error. (*People v. Thomas* (2011) 51 Cal.4th 449, 492 [requiring a timely objection and request for curative admonition to preserve a claim of prosecutorial misconduct].)

### 3. *Ineffective Assistance of Counsel*

Alternatively, Wallace argues that his counsel was ineffective for failing to object to the prosecutor's argument. But even assuming counsel lacked a reasonable basis for not objecting, Wallace cannot demonstrate that there is a reasonable probability he would have received a more favorable verdict absent error. We apply the principles governing claims of ineffective assistance as set forth *ante*, part II.A.3. That is, Wallace must

12

establish both that his counsel's performance was deficient and that he suffered prejudice. (*Strickland*, *supra*, 466 U.S. at pp. 687, 691–692.)

Here, Wallace has not shown in the absence of any error, it is reasonably probable that he would have received a more favorable verdict. The jury here was instructed, in line with *Kurtzman*, that it was "up to you to decide the order in which you consider each crime and the relevant evidence." (CALCRIM No. 3518.) And the jury was further instructed that it must follow the law as instructed by the court, and if it found conflicts between the attorneys' arguments and the court's instructions, the instructions would control.

"[A]rguments of counsel 'generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence, [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.' " (*Centeno*, *supra*, 60 Cal.4th at p. 676.) Furthermore, " '[w]hen argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." [Citation.]' " (*Ibid.*) Since the jury here was correctly instructed with CALCRIM No. 3518, we must "presume that the jury understood and followed the trial court's instructions" during its deliberations and decided for itself the order in which to consider the lesser and greater offenses. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 202; see also *People v. Ramirez* (2023) 98 Cal.App.5th 175, 223 [holding that similar language in CALCRIM No. 3517 mitigated failure to object to prosecutor's misstatement under *Kurtzman*, given presumption that the jury followed the court's instructions].)

13

Wallace argues that CALCRIM No. 3518 is too ambiguous to cure the prosecutor's misstatement. He points out that CALCRIM No. 3518 instructs the jury that it can decide what order to consider "each crime" but does not specify whether this refers to the *charged* crimes or the lesser versus the greater crimes. But as the trial court instructed the jury, CALCRIM No. 3518 applies to the charged crimes of "Simple Assault," a lesser crime of "Assault with a Deadly Weapon." The jury here was also instructed that "[w]ords and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meaning." By applying the ordinary, everyday meaning of "each," "each" crime would refer to every single charged crime, including the greater and lesser offenses specifically identified in CALCRIM No. 3518.[7]

Wallace argues that this court's previous decision in *People v. Olivas* (2016) 248 Cal.App.4th 758 (*Olivas*) is instructive. In *Olivas*, the jury sent the trial court a note during deliberations asking if it could "consider" an alternate count if hung on one of the counts. (*Id.* at p. 772.) In response, the trial court answered no. (*Ibid.*) On appeal, we

---

[7] Although Wallace does not fault his counsel for not objecting to CALCRIM No. 3518, Wallace argues on appeal that CALJIC No. 17.10 provides a clearer statement of the *Kurtzman* rule by instructing the jury that "you have discretion to choose the order in which you evaluate each crime and consider the evidence pertaining to it" and that "[y]ou may find it productive to consider and reach a tentative conclusion on all charges and lesser crimes before reaching any final verdict[s]." But even assuming this is a "clearer" distillation of the *Kurtzman* rule over the wording in CALCRIM No. 3518, this does not render CALCRIM No. 3518 ambiguous or incorrect.

Likewise, in his reply brief, Wallace argues that CALCRIM No. 3518 has since been amended in 2024 to specifically state: "You do not have to reach a verdict on the greater crime before considering the lesser crime." Wallace thus claims that this amendment "makes clear, beyond question" that the prior version of CALCRIM No. 3518 was deficient. Not so. Like the CALJIC instruction, though this may be a *clearer* distillation of the *Kurtzman* rule, it does not suggest in any way that the former version of CALCRIM No. 3518 is deficient. And tellingly, Wallace cites no authority, nor have we found any, for the proposition that CALCRIM No. 3518 is an incorrect statement of law.

held that this instruction violated the *Kurtzman* rule, which had been suggested by the California Supreme Court to apply to alternate counts. (*Olivas*, at p. 774.) We also found the error to be prejudicial: The victim's testimony contained discrepancies, the jury's question showed it was hung on at least one count for a period of time, and "[h]ad the trial court correctly instructed the jury it could consider the counts in whatever order it desired, it is reasonably probable the jury would have acquitted defendant of one or more" of the greater offenses and convicted him of one of the alternative offenses. (*Id.* at p. 776.) And we held that the trial court's earlier instruction with CALCRIM No. 3518 "cannot by itself undo the harm caused by the court's subsequent incorrect response to the jury's question during deliberations." (*Olivas*, at p. 777.)

*Olivas* is distinguishable. There, the *Kurtzman* error was made by the trial court in its answer to a jury question, whereas here, the error was made by the prosecutor during argument. As noted *ante*, the arguments of counsel are not binding on jurors, nor do they carry as much weight as an instruction by the court. (*Centeno*, *supra*, 60 Cal.4th at p. 676.) Furthermore, unlike in *Olivas*, where the jury's question showed confusion over the acquittal-first rule and whether the jury was permitted to consider alternate offenses, no such confusion is apparent in this record. The jury here did not send a note asking for clarification about the deliberation process, nor, as there was in *Olivas*, was there any indication that the jury was hung on any of the greater offenses. (*Olivas*, *supra*, 248 Cal.App.4th at p. 772.)

Finally, Wallace argues that prejudice is shown because there was strong evidence that he did *not* commit assault with a deadly weapon and was instead guilty of simple assault, citing evidence that he did not intend to harm Gutierrez as she was merely standing in his way of Rodriguez and that the blade must have fallen off his knife before he could make a meaningful assault on Rodriguez. But this argument ignores the evidence before the jury. Although Wallace disavowed any connection to the knife

15

recovered at the scene, there is no evidence of any other knives or blades that would match Wallace's description:  Gutierrez showed officers the broken knife in her apartment and identified the knife introduced into evidence as the one that Wallace wielded.  And the state of the knife handle and blade make it improbable that the jury would have credited Wallace's claim that the blade was a detachable one that spontaneously disengaged due to a loose bolt.  The riveted handle and blade recovered exhibited no mechanism for removing and replacing blades; the handle showed a still-protruding stub of blade remained, suggesting that the recovered blade had snapped off under force, consistent with the stabbing motions recorded in the surveillance video of the assault.

Furthermore, Wallace's arguments about the comparative weight of the evidence of the lesser and greater offenses is relevant only *if* the jury misapplied the law as instructed in its deliberations.  And the only instructions given by the trial court were accurate—that the jury was entitled to "decide the order in which [it] consider each crime."  (CALCRIM No. 3518.)

We thus find that Wallace has not met his burden to demonstrate that absent error, it is reasonably probable that he would have received a more favorable outcome.  (*Strickland*, *supra*, 466 U.S. at p. 694.)

## C.    *Cumulative Error*

Finally, Wallace argues that the cumulative impact of the trial errors in this case require reversal of his convictions.  "In theory, the aggregate prejudice from several different errors occurring at trial could require reversal even if no single error was prejudicial by itself."  (*In re Reno* (2012) 55 Cal.4th 428, 483.)  Here, although we have assumed that failing to object to the prosecutor's disregard of *Kurtzman* and failing to request a pinpoint instruction constituted deficient performance, the errors were not independently prejudicial.  Aggregating these two assumed but harmless errors does not alter our assessment of prejudice on this record.

16

**D.** *The "Person-Present" Finding*

Wallace was sentenced to consecutive terms for his convictions for first degree burglary and the assault on Rodriguez, but Wallace makes no argument that these consecutive sentences constitute improper double punishment under section 654. Instead, Wallace argues that it is the designation of his first degree burglary as a violent felony (because a "person not an accomplice" was present during its commission (§ 667.5, subdivision (c)(21))) that punishes him twice for his single entry with a single felonious intent (as he claims, to assault both Rodriguez and Gutierrez). We find no basis in Wallace's arguments for the person-present finding to be stricken.

**1.** *Additional Legal Background*

Section 459 defines a burglary in part as entry into a house "with intent to commit . . . any felony"—here, the burglary count was charged as entry into the apartment with the intent to "commit assault with a deadly weapon on Julia Gutierrez and/or Edgar Rodriguez." "Every burglary of an inhabited dwelling house . . . is burglary of the first degree." (§ 460, subd. (a).) And a first degree burglary becomes a "violent felony" when "it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).)[8]

Although the violent-felony determination does not increase the sentencing terms prescribed for the first degree burglary under section 461, subdivision (a) ("two, four, or six years"), a defendant serving a sentence for a violent felony offense "shall accrue no

---

[8] Any first degree burglary is considered a "serious felony" under section 1192.7, subdivision (c)(18). Both serious and violent felonies can later "subject an offender to substantially enhanced punishment under the 'Three Strikes' law should he or she reoffend." (*In re Pacheco* (2007) 155 Cal.App.4th 1439, 1445; §§ 667, subd. (b), 1170.12, subds. (a)–(e).)

17

more than 15 percent of worktime credit, as defined in Section 2933." (§ 2933.1, subd. (a).) "Ordinarily"—absent this credit limitation applicable to violent felony sentences—"prisoners earn worktime credit at the rate of . . . one day of credit for each day of [work] participation." (*In re Pope* (2010) 50 Cal.4th 777, 781 (*Pope*); see § 2933, subd. (b).)

## 2. *The Prohibition Against Multiple Punishment*

Wallace argues that "[t]he violent felony 'person present' enhancement" under section 667.5, subdivision (c)(21) "must be stricken because it double[-]punishes [him] for the same conduct that makes his actions into a first degree burglary." (Boldface & capitalization omitted.) Wallace's framing of the issue, however, is conceptually defective, and his doctrinal argument is legally infirm.

To begin, the act necessary to a first degree burglary is entry into "an inhabited dwelling," but the actual presence or absence of the inhabitant, or any person, has long been deemed irrelevant. (§ 460, subd. (a); *People v. Guthrie* (1983) 144 Cal.App.3d 832, 838–839 [collecting cases].) The intent necessary for burglary of any degree is the intent to commit a felony—here, the intent to assault Rodriguez or Gutierrez, at minimum. (§ 459.) And the presence or absence of the intended victim(s)—like the actual perpetration of the intended assault—is likewise irrelevant. (*Ibid.*) So Wallace's claim that first degree burglary under section 461 requires "the same conduct" as the actual presence of a person other than an accomplice under section 667.5, subdivision (c)(21) misapprehends both statutes.

Wallace argues that as applied to his case, there is a latent ambiguity in section 667.5, subdivision (c)(21), which makes any first degree burglary a violent felony upon the presence of another person other an accomplice. (*People v. Childs* (2013) 220 Cal.App.4th 1079, 1101 [latent ambiguity arises when a statute is unambiguous but "a literal interpretation of a statute would frustrate the purpose of the statute"].) Under

18

Wallace's theory, if the felonious purpose necessary to a burglary is to assault a person within, the presence of that person in the burgled residence adds nothing to the risk posed by this type of burglary, thereby frustrating the purpose of section 667.5's violent felony designation. We disagree with the premise: when the intended victim is in fact present in an inhabited dwelling, " '[t]he risks arising from burglary are greater . . . justifying the additional sanctions found in section 667.5, subdivision (c)(21).' " (*People v. Debouver* (2016) 1 Cal.App.5th 972, 982.) Wallace's interpretation of the statute would suggest that a burglar who enters a home intending to assault a person who happens to be fortuitously absent poses the same quantum of risk to that person as a burglar who enters *with knowledge* the person he intends to assault is actually inside. We discern no absurdity in the Legislature thinking the person inside would disagree. As the plain meaning of the statute produces no absurd consequence, we find no ambiguity in section 667.5, subdivision (c)(21) that would bar its application here. (See *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1495–1496 ["a court should not create a latent ambiguity where none exists"].)

Wallace likewise misconstrues the prohibitions on double punishment that he invokes. Under section 654, subdivision (a), "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." But first, contrary to Wallace's logic, section 654 does not prohibit multiple *convictions*: "[A] person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." ' " (*People v. Reed* (2006) 38 Cal.4th 1224, 1226 (*Reed*); see also § 954.) Thus, there is no impediment to the prosecutor charging (and obtaining) convictions for multiple offenses from the same course of conduct that gave rise to the convictions in this

19

case, including the first degree burglary conviction *with* the person present allegation.[9]  In other words, section 954 permits multiple conviction but section 654 is its counterpart, barring multiple punishment for the same act or omission.  (*Reed*, at p. 1227.)  Under section 654, "the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited."  (*Ibid.*)

Second, though section 654 operates as a bar against multiple *punishment*, the "person present" finding under section 667.5, subdivision (c)(21) does not authorize a sentencing court to impose a longer sentence.  Rather, it limits what the California Department of Corrections and Rehabilitation may award as credits against the imposed sentence beyond Wallace's actual days in custody.  We acknowledge the significance of this limitation on potential worktime credit to a defendant in custody.  But even assuming section 2933.1's limitation on custody credits is a punishment under section 654,[10] section 2933.1 on its face applies "[n]otwithstanding any other law":  This "prevent[s] or negate[s] the operation of section 654 even in the absence of an express reference to that provision."  (*People v. Duff* (2010) 50 Cal.4th 787, 798 (*Duff*) [interpreting identical language found in § 2933.2].)  The California Supreme Court has in fact held that section 2933.1's worktime credit limitation applies to a defendant's aggregate sentence even when the trial court has stayed the term for the qualifying violent felony under section 654.  (*Pope*, *supra*, 50 Cal.4th at p. 782.)  In such a case, the defendant "still 'is convicted' of those offenses."  (*Id.* at p. 784.)  Thus the Legislature intended

---

[9] There is a judicially created exception to multiple convictions " 'based on necessarily included offenses,' " which are crimes that " 'cannot be committed without also necessarily committing a lesser offense . . . .' " (*Reed*, *supra*, 38 Cal.4th at p. 1227.)  None of the offenses here can properly be considered lesser offenses of each other.

[10] In *People v. Lara* (2012) 54 Cal.4th 896, the California Supreme Court observed that it "need not take issue with the proposition that a person who is released a day early is punished a day less."  (*Id.* at pp. 905–906.)

section 2933.1 as "an *exception* to section 654." (*Pope*, at p. 785, italics added; see also *Duff*, at p. 800.)

Under *Pope*, *Duff*, and the plain language of section 2933.1, subdivision (a), even if the first degree burglary arose from the same act or omission of the person present allegation (the intent to commit an assault on those persons present), section 654 does not bar the application of section 2933.1.

### 3. *The STEP Act Analogy*

Wallace would have us rely on several cases involving the Street Terrorism Enforcement and Prevention Act (STEP Act, § 186.22), which provides enhanced punishment for gang-related offenses. But we find none of these cases persuasive.

In *People v. Arroyas* (2002) 96 Cal.App.4th 1439 (*Arroyas*), the Second District Court of Appeal held that a gang enhancement applicable to felonies under section 186.22, subdivision (b)(1) did not apply to a misdemeanor that was made a felony only by section 186.22, subdivision (d). "[N]othing in [section 186.22] or in its stated purposes suggests an intention of the people of this state to bootstrap subdivision (d) misdemeanors into subdivision (b)(1) felonies as a means of applying a double dose of harsher punishment." (*Arroyas*, at p. 1445.) In *People v. Briceno* (2004) 34 Cal.4th 451 (*Briceno*), our high court concluded that "while it is proper to define any felony committed for the benefit of a criminal street gang as a serious felony under section 1192.7[, subd. ](c)(28)" for recidivist sentencing in a future case, "it is improper to use the *same* gang-related conduct *again* to obtain an additional five-year sentence under section 186.22[, subd. ](b)(1)(B)" in the current case. (*Briceno*, at p. 465.) And the Fourth District in *Lopez v. Superior Court* (2008) 160 Cal.App.4th 824 (*Lopez*) found that it was impermissible to use the same "fact" of gang-related conduct to penalize a defendant for criminal conduct then further enhance the punishment by again alleging the same gang-related fact. (*Id.* at p. 833.) *Arroyas*, *Briceno*, and *Lopez* are distinguishable.

First, each case concerns section 186.22, the legislative history of which reflected an intent that section 654 prevent double punishment. (*Arroyas*, *supra*, 96 Cal.App.4th at p. 1448.) But as we have explained, section 2933.1, subdivision (a)'s conduct credit limitation expressly applies "[n]otwithstanding any other law." (See *Pope*, *supra*, 50 Cal.4th at p. 785 [discerning legislative intent that § 2933.1 operate as an exception to § 654].)

Second, as we have explained, this case does not present the dual use of the same "fact" to both punish the underlying offense and enhance that same punishment. Although the "fact" of Rodriguez's or Gutierrez's presence in the home is necessary to satisfy section 667.5, subdivision (c)(21), their presence was not essential to the burglary conviction itself—indeed, a burglar who enters a dwelling with the felonious intent to commit assault has committed a burglary, regardless of whether the intended victim is actually inside. Here, there is no "double dose" of punishment with regards to the burglary offense. A contrary conclusion would render any first degree burglary with a person present allegation an impermissible "double dose" of harsher punishment. We thus find Wallace's reliance on *Arroyas*, *Briceno*, and *Lopez* to be unpersuasive.

4.    ***The Narrowing Requirement Under the Eighth Amendment***

And finally, Wallace asserts that the person-present finding here offends the Eight Amendment's "narrowing" requirement—that states "limit the class of murderers to which the death penalty may be applied" (*Brown v. Sanders* (2006) 546 U.S. 212, 216)—because any person who commits a burglary with the intent to commit an assault upon a person inside the dwelling would be committing a burglary with a person present. But the Eighth Amendment's narrowing requirement is specific to death-eligible cases. We have found no authority suggesting that the Eighth Amendment's narrowing requirement extends more broadly. (See also *Harmelin v. Michigan* (1991) 501 U.S. 957, 995–996

22

[recognizing no comparable requirement outside the capital context for "individualized capital sentencing doctrine"].)

**E.     *Application of Section 1385***

In declining to dismiss the prior strikes or serious felony enhancements based on his 1984 and 1988 convictions, the trial court described the mitigating factors enumerated in section 1385, subdivision (c)(2) as "just the factor[s] that the [c]ourt can consider in exercising its discretion as to whether or not that's to be considered in reaching its determination of whether there is a factor in the interest or the furtherance of justice." Wallace thus argues that the trial court misapplied section 1385.  In challenging the trial court's exercise of discretion under section 1385, Wallace raises a pure question of law— whether the "great weight" it gives to enumerated mitigating factors compels dismissal of an enhancement unless dismissal would endanger public safety.  Since the completion of briefing, the California Supreme Court has conclusively resolved the question by adopting a "standard . . . with[] teeth."  (*People v. Walker* (2024) 16 Cal.5th 1024, 1037 (*Walker*).)  Although that standard leaves the trial court more discretion to deny a motion to dismiss than Wallace had posited, we are persuaded that the trial court pre-*Walker* was not fully cognizant of the "greater guidance" (*id*. at p. 1037) the Legislature intended to limit that discretion.  We will therefore reverse the sentence.  To the extent Wallace argues that section 1385, subdivision (c) applies to his strike allegations as well as to the serious felony enhancements based on the same past convictions, we follow *People v. Olay* (2023) 98 Cal.App.5th 60 (*Olay*) for guidance to the trial court on remand.

**1.     *Legal Principles and Standard of Review***

Under section 1385, subdivision (a), the trial court can, "in furtherance of justice, order an action to be dismissed."  This provision extends to permit a trial court "to strike prior felony conviction allegations in cases brought under the Three Strikes law." (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529–530; see also *People v.*

23

*Williams* (1998) 17 Cal.4th 148, 161 [identifying factors to be considered in determining whether a defendant "may be deemed outside the scheme's spirit, in whole or in part"].)

Effective January 1, 2022, Senate Bill No. 81 amended section 1385, "allowing the trial court to dismiss any enhancement 'in the furtherance of justice' (§ 1385, subd. (c)(1)) unless otherwise prohibited, and providing that nine enumerated mitigating circumstances . . . 'weigh[] greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.' (*Id.*, subd. (c)(2).)" (*Walker*, *supra*, 16 Cal.5th at pp. 1031–1032.) Thus under section 1385, "absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in the furtherance of justice.' " (*Id.* at p. 1036.)

We review for abuse of discretion a trial court's decision under section 1385. (*People v. Carmony* (2004) 33 Cal.4th 367, 371.) But here, Wallace's argument is that the trial court erred in its application of section 1385 by misapprehending the applicable standard and failing to apply a presumption in favor of dismissal of his prior strikes and his serious felony enhancements. We review de novo the proper interpretation of a statute. (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

**2.      *Mandatory vs. Discretionary Consideration of Mitigating Circumstances***

Wallace's core contention is that Senate Bill No. 81 created a presumption in favor of striking enhancements when one or more enumerated factors listed in section 1385, subdivision (c)(2) are present. The California Supreme Court has since squarely rejected the presumption theory on which Wallace relied. (*Walker*, *supra*, 16 Cal.5th at p. 1033.) But even though we reject Wallace's statutory interpretation requiring a presumption in favor of dismissal, we recognize that the trial court in this case lacked the benefit of

24

*Walker*'s guidance at sentencing. *Walker* expressly held there was no presumption in favor of dismissals of enhancements but specified that the "standard we set out today itself gives force to the 'great weight' standard." (*Walker*, at p. 1038.) And that "absent a finding that dismissal would endanger public safety, a court must assign significant value to the enumerated mitigating circumstances when they are present" and that "[i]n practice, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in the furtherance of justice.' " (*Ibid.*)

As Wallace notes in arguing that the trial court prejudicially misapplied section 1385, subdivision (c), the trial court described the (c)(2) factors as "just the factor[s] that the [c]ourt can consider in exercising its discretion as to whether or not that's to be considered in reaching its determination of whether there is a factor in the interest or the furtherance of justice." The court's apparent recasting of the statute as permissive reduces the enumeration of factors to a purely illustrative clarification of the court's traditional discretion predating Senate Bill No. 81. Although defense counsel pointed out that the trial court was required to afford the mitigating circumstances "great weight," at no point during the sentencing hearing did the trial court make any references to whether dismissal of the enhancements would endanger public safety or that it was walking back on its suggestion that the mitigating factors were "just the factor[s]" that it could but was not obliged to consider.

We recognize that as a general rule, " 'a trial court is presumed to have been aware of and followed the applicable law.' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) This rule derives in part from Evidence Code section 664's presumption " 'that official duty has been regularly performed.' " (*Stowell*, at p. 1114.) Likewise, error cannot be

shown on a silent record. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229.) But the presumption under Evidence Code section 664 can be rebutted "when 'irregularity is clearly shown.' " (*In re Hare* (2010) 189 Cal.App.4th 1278, 1292.) And here, though the trial court was not required to make express findings when declining to dismiss an enhancement (§ 1385, subd. (a) [reasons for dismissal of enhancement must be stated on record]), the record is not silent—indeed, the trial court's expressly misstated section 1385, subdivision (c)'s standard. This misstatement demonstrates that it misunderstood its discretion, albeit understandably as the sentencing hearing predated the California Supreme Court's decision in *Walker*. Indeed, the high court went on to explain "that the Legislature, in enacting Senate Bill No. 81, expressed concern that the prior version of section 1385 may be ' "underused" ' and greater guidance 'would provide . . . reductions in unnecessary incarceration' and counter 'demographic disparities in sentences.' " (*Walker*, *supra*, 16 Cal.5th at p. 1037.)

As section 1385 requires that the trial court afford great weight to the enumerated mitigating circumstances absent a finding of endangerment to public safety, we do not read this mandate as leaving the court with the discretion to decline to consider them at all. The existence of multiple mitigating circumstances was undisputed—the allegation of multiple enhancements (§ 1385, subd. (c)(2)(B)), some based on convictions over five years old (§ 1385, subd. (c)(2)(H)). The trial court thus had a statutory duty to consider them, and it was an abuse of discretion not to do so. "An abuse of discretion occurs when the trial court . . . fails to consider a relevant factor that deserves significant weight . . . ." (*In re White* (2020) 9 Cal.5th 455, 470; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez II*) [abuse of discretion occurs when court is unaware of the scope of its discretionary powers].)

To be sure, the jury found several aggravating factors to be true: (1) the crimes involved great violence, threat of bodily harm, or other acts disclosing a high degree of

cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) Wallace was armed with or used a weapon at the time of the commission of the crime (*id.*, rule 4.421(a)(2)); (3) he had engaged in violent conduct that indicates a serious danger to society (*id.*, rule 4.421(b)(1)); (4) his prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (*id.*, rule 4.421(b)(2)); (5) he had served a prior prison term in prison or county jail under section 1170, subdivision (h) (*id.*, rule 4.421(b)(3)); and (6) his prior performance on probation, mandatory supervision, post-release community supervision, or parole was unsatisfactory (*id.*, rule 4.421(b)(5)). But it is unclear whether the trial court would have reached the same decision to deny Wallace's request to dismiss his sentencing enhancements had it applied the correct standard. Under such circumstances, when "the record[] do[es] not clearly indicate that [the trial court] would have imposed the same sentence had [the court] been aware of the full scope of [its] discretion," remand is required. (*Gutierrez II*, *supra*, 58 Cal.4th at p. 1391.) In reversing Wallace's sentence, we express no opinion on whether a danger to public safety lessens the great weight to be afforded mitigating circumstances under section 1385, subdivision (c)(2), or whether the multiple aggravating factors found true by the jury are dispositive. We hold only that Wallace is entitled to the trial court's exercise of discretion, fully and accurately informed by the California Supreme Court's guidance in *Walker*.

### 3. *"Enhancement" Under Section 1385, subdivision (c)*

For the trial court's benefit in applying *Walker*, *supra*, 16 Cal.5th 1024 on remand, we address Wallace's second contention—that the "enhancements" to which section 1385, subdivision (c) expressly applies must include strike priors. The First District Court of Appeal in *Olay*, *supra*, 98 Cal.App.5th 60 persuades us otherwise.

We recognize the "established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the

27

Three Strikes law." (*People v. Burke* (2023) 89 Cal.App.5th 237, 243.)  On the other hand, Wallace argues that the drafter of Senate Bill No. 81 intended "enhancement" to extend to the alternative sentencing scheme triggered by prior strike convictions.  But any ambiguity in the Legislature's adoption of the term "enhancement" was dispelled in the ensuing legislative history:  "[T]he bill analysis states, in no uncertain terms, that '[t]he presumption created by this bill applies to enhancements [] *but does not encompass alternative penalty schemes*.' "  (*Olay*, *supra*, 98 Cal.App.5th at p. 67, quoting Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81, as amended Apr. 27, 2021, at p. 6, italics added.)  Nothing in the later legislative history detracts from the clarity of this statement of legislative intent.  Accordingly, we are persuaded that section 1385, subdivision (c) does not apply to Three Strikes law but only to enhancements such as Wallace's enhancements under section 667, subdivision (a).  (*Olay*, at p. 69; *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2; *Burke*, at p. 244.)

### III.    DISPOSITION

The judgment is reversed and the matter remanded for the sole purpose of resentencing under current law.

28

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

GROVER, J.

*People v. Wallace*
H050429